```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
        - against -                                            :
                                                               :   Cr. No. 14-208 (S-1) (ADS)
WILLIAM SCULLY,                                                :
                                                               :
                                        Defendant.             :
---------------------------------------------------------------x
```

## SENTENCING MEMORANDUM OF DEFENDANT WILLIAM SCULLY

Defendant William Scully ("Mr. Scully," or "Liam") respectfully submits this memorandum in connection with his sentencing. Although the Presentence Report ("PSR") includes a description of Mr. Scully's background and the offense, he submits this memorandum to provide additional detail regarding these matters. It is respectfully submitted that when the Court considers all of the facts relevant to his sentencing, a total sentence of 15 months, with credit for time already served, is "sufficient but not greater than necessary," to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

Mr. Scully accepts full responsibility for his actions and nothing herein is intended to minimize or excuse his conduct. However, his conduct in the present case does not tell the full story of Mr. Scully. His devotion to his family is unimpeachable. His family members and friends know him as a loving, generous and well-meaning contributor to both his family and the community.

It is respectfully submitted that when the Court makes an individualized sentencing assessment, it will find that a below Guidelines determination is sufficient to comply with the purposes of 18 U.S.C. Section 3553(a).

1

## I. <u>Background</u>

William Scully's Personal History:

    Mr. Scully is 49 years old. He was born on March 5, 1969 in New York, New York. Mr. Scully enjoyed a good childhood, raised by his mother and father, along with three siblings, in a lower middle income household. These circumstances changed suddenly and dramatically with the untimely death of Liam's father, an N.Y.P.D. detective, when Liam was only fifteen. This tragic circumstance turned the adolescent Liam's life upside down; leaving him fatherless during those critical teenage years, as well as thrusting unexpected burdens upon him to help support the family.

    When he was 26 years old, Mr. Scully married Suzanne Bruen. The couple have enjoyed a strong and loving twenty three year marriage, and have three wonderful children as a result; nineteen year old William, fifteen year old Ashley, and twelve year old Lindsay. When interviewed by the probation department, Mrs. Scully described Liam as "an excellent person, who is caring, kind, and generous" (P.S.R. par. 109). In her letter to the court, Mrs. Scully goes into much greater detail. She describes the numerous ways that Liam has shown himself to be selfless towards others during the length of their relationship. She discusses how Liam adores his children, and the invaluable and priceless lessons and examples that he has set for them. Liam's mother, in her letter to the court, echoes many of these sentiments while giving additional examples of Liam's character; his caring and devotion to his family, as well as his compassion for others. The additional submissions from Liam's extended family; his sibling's and in-law's, as well as the many submissions from non-family friends, paint the same picture of this man.

He is universally loved and admired for his personality and character. Such a consistent picture cannot be coincidence. In fact, nothing I say about Mr. Scully could be more revealing about his true character than the fact that sixty four (64) letters of support have been submitted on Liam's behalf. Nothing, I submit, points to the true character of Liam Scully more than the esteem in which he is held by those whose lives he has touched.

Apparent from all of these letters is that Liam is an important part of the lives of his family and friends. The authentic love and care he provides to his family and friends is evidenced by the outpouring of support he has received in these letters to the Court. His absence has been felt by many different people, in a variety of different ways. In a world seemingly filled with increased hate each passing day, Liam is a beacon of kindness and caring. As discussed below, we respectfully submit that Mr. Scully's strong family ties and responsibilities constitute an important part of the "history and characteristics of the defendant" and are a reason for a lesser sentence.

### A. **P**LEA **A**GREEMENT

On May 24, 2018, pursuant to a written plea agreement, Mr. Scully pled guilty before Your Honor, to one count of Introduction of Misbranded Drugs into Interstate Commerce in violation of 21 USC 331(a) and 333(a)(2). The plea agreement contains a stipulated Guidelines range of 46-57 months, based on a Criminal History Category I. However, the statutory maximum sentence for this violation is 36 months. Additionally, the plea agreement specifically reserved the right of Mr. Scully to argue at sentencing for a sentence below the stipulated guideline range.

## II. APPLICABLE SENTENCING LAW

As the Court is well aware, the Sentencing Guidelines are advisory and while they serve as the starting point for a sentencing court's analysis, the inquiry does not end there. As noted in Nelson v. United States, 129 S. Ct. 890 (2009), where the Court summarily reversed the Fourth Circuit which had upheld a district court's application of a presumption of reasonableness to the guidelines:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

Id. at 892 (emphasis in original). Thus, the guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)[3] in order to create an "individualized assessment" based on a defendant's particular circumstances. Gall vs. United States, 552 U.S. 38, 49-50 (2007); see also United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." Cavera, 550 F.3d at 188.

The Court has ample discretion to impose a below-Guidelines sentence. See Kimbrough v. United States, 552 U.S. 85, 101-10 (2007). In doing so, the Court may consider, and rely upon, any information available concerning the background, character, or conduct of the defendant.

---

[3] The relevant factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, inter alia: provide just punishment, deter criminal conduct, protect the public from any future crimes by the defendant, and provide the defendant with rehabilitative training and treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the offense; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

See Cavera, 550 F.3d at 189-91; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense for which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Moreover, in making an "individualized assessment," the Court is not only empowered to impose a sentence below the Guidelines range, it is required to do so where a lower sentence would be sufficient to comply with the purposes of Section 3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-84 (2d Cir. 2010); United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). This is consistent with the long-standing principle that a Court consider "every convicted person as an individual" and to uphold "the principle that the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011). In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate for the individual circumstances of the offense and the defendant, and is "sufficient, but not greater than necessary" to achieve the statutory goals of punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

### III. THE PSR AND THE DEFENDANT'S OBJECTIONS

The PSR calculates a total offense level of 25 and a criminal history category of I (See Third Addendum to PSR, page 5).

1. The PSR includes one enhancement that is not part of the defendant's plea agreement and we do not believe applicable. The PSR adds a two-point enhancement based upon the assertion that Mr. Scully organized and led the activities of himself and his co-defendant (See Third Addendum to PSR, page 5). However, as noted in the PSR, Mr. Scully and Mr. Lameh were equal partners, and, "Lameh was fully aware of the scope of the

enterprise" (See Third Addendum to PSR, page 2). Again, this was not an enhancement contemplated by either the defendant or the government when formulating the Plea Agreement.

2. With regard to the Offense Conduct, the PSR notes that Mr. Scully "did not have a Prescription Drug Wholesaler license for Taranis"(See Third Addendum to PSR, page 2, 2nd paragraph). The defense takes exception to this remark, in that Mr. Scully **did** have such a license under the name Pharmalogical, Inc. If an individual already has a license in his name for another company (in this case, Pharmalogical), that individual need not apply for a second license under a different company name.

3. The PSR includes a paragraph that the defendant contends to be a mischaracterization of the facts. On page 3, paragraph 2 of the Third Addendum to the PSR the Probation Department recounts a series of events concerning alleged interaction between the NYS Board of Professional Discipline and Mr. Scully. While Probation characterizes Mr. Scully as being uncooperative in these discussions, Mr. Scully refutes this as a blatant mischaracterization of the facts. Mr. Scully cooperated with the Board to the full extent possible, and in fact, "The Board never took any action on Pharmalogical's license, and in fact renewed the license through 2015"

(See Third Addendum to PSR, page 3).

### IV. A BELOW GUIDELINES SENTENCE IS APPROPRIATE

Analysis of the Section 3553 factors weighs in favor of a below Guidelines sentence. It is respectfully submitted that 15 months imprisonment, with credit for time already served, is

"sufficient but not greater than necessary" to provide just punishment.

As discussed above, the Court should consider "every convicted person as an individual" and that "the punishment should fit the offender and not merely the crime." Pepper, 562 U.S. at 487-88. Here, we submit that a sentence of 15 months, with credit for time already served, is appropriate for Mr. Scully and represents a holistic approach to sentencing an individual.

    A.    **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE**

A total sentence of 15 months incarceration, with credit for time already served, would reflect the nature and circumstances of the offense, the seriousness of the offense, promote respect for the law and provide just punishment.

While, originally, Mr. Scully was sentenced by Your Honor after having been convicted, after trial, of 66 counts of a 71 count indictment, the circumstances now could not be more different. Liam has already served 15 months in prison, stemming from the original sentencing after trial. The statutory maximum that Mr. Scully can receive on this revised plea is 36 months. As such, Liam has already served approximately one half of the statutory maximum.
And that would be true of any individual being sentenced on this charge, including those with extensive criminal records. Mr. Scully has no prior criminal record, no prior involvement with the criminal justice system. It is our contention that Mr. Scully has been adequately punished for the present offense.

    B.    **THE HISTORY AND CHARACTER OF MR. SCULLY**

7

As previously stated, prior to the instant offense, Mr. Scully had no interaction with the criminal justice system. As the numerous letters demonstrate, he is a caring, generous family-man. His importance to the family unit is a factor the Court should consider when it adjudges the "history and characteristics of the defendant." When the sentencing guidelines were binding on the Court, factors such as Mr. Scully's import to his family would have justified a departure from the applicable guidelines range.

See, e.g., United States v.Londono, 76 F.3d 33, 36 (2d Cir. 1996) ("this Court and other courts of appeals have recognized that a defendant's familial responsibilities may present such 'extraordinary circumstances' that a downward departure in sentencing is necessary and permissible"); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) (same). Now that the sentencing guidelines are only advisory, the reasoning of these cases supports a non-guidelines sentence below the applicable sentencing range when a defendant is a valuable and indispensable member of the family unit, as we submit Mr. Scully is.

Mr. Scully's extraordinary acts of charity are also relevant to the Court's consideration of the "history and characteristics of the defendant" when fashioning an appropriate sentence. As demonstrated in the letters submitted herewith, it is clearly Mr. Scully's nature to do good for his family, friends, and community.

### C. THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Mr. Scully has already spent 15 months incarcerated on this case, away from his family. He missed numerous birthdays, holidays and family celebrations. During that time incarcerated, Liam was able to reflect, and he fully appreciates both the wrongness of his

conduct as well as the potential dangerousness of it. He is committed to living the same law abiding life he did before this case, and never again being absent from his family. A total sentence of 15 months, as well as a period of supervised release, will provide adequate specific deterrence. At some point the addition of incremental months to Mr. Scully's jail sentence no longer promotes the goals of sentencing, and instead become retribution. See United States v. Jenkins, 854 F.3d 181, 192 (2d Cir. 2017) ("Additional months in prison are not simply numbers. Those months have exceptionally severe consequences for the incarcerated individual."). This is especially true in this situation. Mr. Scully had already served 15 months incarceration before being released in connection with the 2nd Circuit's decision on the underlying appeal. To take an individual who had never previously served a day in prison, release him, and then re-incarcerate him after he has just readjusted to life as a free man hints at the retribution suggested in Jenkins, supra.

To the extent that the Court has observed that at least some potential offenders are deterred from committing future crimes by the sentences of others, we respectfully submit that a 15 month sentence will produce that effect. The public is now on notice that the Courts may impose long sentences on those who commit crimes of the sort prosecuted here.

In addition, the effect of harsh sentences as "general deterrents" is questionable. Social science appears to undermine the notion that lengthy sentences will deter others from committing similar crimes. See Amy Baron-Evans, Sentencing by the Statute, pp. 7-9 (April 27, 2009, revised Dec. 21, 2010) ("…potential criminals … do not believe [that] they will be apprehended and convicted," and therefore, they do not "consider sentence consequences in the manner one might expect of rational decision makers") (citing Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A review of Research 28-19 (2006)), a

9

copy of Ms. Baron-Evan's article can be found at https://nyn.fd.org/content/sentencing-statute-amy-baron-evans-2009.  Because there is no evidence to suggest that sentencing Mr. Scully to a more severe punishment will lead to a reduction of crime through general deterrence mechanisms, it is respectfully submitted that a sentence of 15 months is "sufficient, but not greater than necessary" to achieve the statutory goals of deterrence.

### D. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

On April 13, 2018, Kristjan Thorkelson pleaded guilty to a one count criminal information charging Misprison of a Felony.  Specifically, the offense that Thorkelson had knowledge of, concealed, and failed to report was the felony crime of introducing, and delivering for introduction, into interstate commerce misbranded prescription drugs, with intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a).  Thorkelson, the former CEO of Canada Drugs, permitted the distribution of counterfeit cancer drugs Avastin and Altuzan (the Turkish version of the drug) in the United States.  Thorkelson denied selling or offering Avastin, even while his company attempted to recall the suspect drugs.  At no time did Thorkelson notify the FDA that counterfeit cancer drugs containing no active ingredient had been shipped to providers in the United States.  In the government's statement, United States Attorney Kurt Alme said "By circumventing the FDA approval process, Thorkelson and the Canada Drugs companies jeopardized the health and safety of Americans.

Thorkelson was then sentenced by Chief U.S. District Judge Dana Christensen to 5 years probation, with the first 6 months to be served under home confinement.  This, following a recommendation from the government that the defendant be sentenced in that manner.

The parallels between the Thorkelson case and Mr. Scully's case are dramatic and

undeniable. In fact, the breadth and scope of the Thorkelson drug distribution dwarfs that of Mr. Scully's. Yet, Thorkelson will never see one day behind bars. Liam Scully has already served 15 months behind bars. The 3553a consideration that similar defendants with similar records and who have been found guilty of similar conduct cries out for a sentence of time already served in the case of Liam Scully.

**V. CONCLUSION**

For all the foregoing reasons, Liam Scully respectfully requests that the Court impose a total sentence of 15 months incarceration, with credit for time already served.

Dated: September 12, 2018
      Central Islip, New York

                                                                _____
Glenn Obedin, Esq.
Naiburg, Obedin & Weissman
The Courthouse Corporate Center
320 Carleton Avenue, Suite 4200
Central Islip, New York
11722 Tel. 631-979-7777
      Fax 631-265-5952

*Attorney for William Scully*